UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

ARAB STUDENT UNION OF
JACKSON–REED HIGH SCHOOL
3950 Chesapeake Street, NW
Washington, D.C. 20016

        Plaintiff,

v.

DISTRICT OF COLUMBIA
1350 Pennsylvania Avenue, NW
Washington, DC 20004

SAH BROWN
Jackson-Reed High School
3950 Chesapeake Street, NW
Washington, D.C. 20016

        Defendants.

No. 1:24-cv-_____

---

**COMPLAINT**
**FOR DECLARATORY AND INJUNCTIVE RELIEF**
(Violation of First Amendment Rights, Equal Access Act, and D.C. Student Bill of Rights)

**INTRODUCTION**

1. The Arab Student Union is a recognized student club at Jackson-Reed High School. For the past four months, it and its members have been trying to engage in expressive activities at the high school—showing a documentary film, putting up posters, distributing literature, presenting a cultural program—but have been stopped at every turn by the school administration. Their activities would not be disruptive; they are the same kinds of activities in which other student clubs engage. Their speech has been suppressed because the school does not want their viewpoint—which concerns the ongoing war in Gaza and its effects on the Palestinian people—to be heard. Plaintiff seeks declaratory and injunctive relief directing the school to stop

violating its and its members' First Amendment rights and their rights under the Equal Access Act and the D.C. Student Bill of Rights.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 because Plaintiff's claims arise under the Constitution and laws of the United States. The Court has supplemental jurisdiction of the local-law claim under 28 U.S.C. § 1367.

3. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the acts and omissions complained of occurred in this District.

4. This Court has authority to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

5. Defendants' constitutional violations are actionable pursuant to 42 U.S.C. § 1983, and independently via a claim invoking the Court's inherent equitable power.

## PARTIES

6. Plaintiff Arab Student Union of Jackson-Reed High School (Arab Student Union or ASU) is an unincorporated association of students enrolled at Jackson-Reed High School (Jackson-Reed). The Arab Student Union sues on its own behalf and on behalf of its members.

7. Defendant District of Columbia is a municipal corporation. Among its executive branch agencies is the District of Columbia Public Schools ("DCPS"), which administers the Jackson-Reed High School.

8. Defendant Sah Brown is the Principal of Jackson-Reed High School. He is sued in his individual capacity. He is personally responsible for the abridgment of Plaintiff's rights complained of herein. With respect to all actions by Defendant Brown alleged in this Complaint, he acted under color of District of Columbia law.

## FACTS

### Facts relating to the Arab Student Union

9. Jackson-Reed High School opened its doors in 1935. It educates more than 1,900 students from grades 9 through 12 and focuses on a college-preparatory curriculum. It is one of the most diverse high schools in the country.

10. The Arab Student Union is a recognized student club at Jackson-Reed High School. It has approximately 19 members. It is one of more than sixty school clubs at Jackson-Reed, including the Asian Student Union, the Black Student Union, and the Jewish Student Union. Like many of the other school clubs, it holds regular meetings during lunch hour. Like many of the other clubs, it sometimes holds events of interest to other students and advertises those events within the school. Like many of the other clubs, it sometimes distributes expressive materials on school premises.

11. The Arab Student Union organized a "Pennies for Palestine" fundraiser in January-February 2023 which raised some money for humanitarian aid. It also hosted an event in May 2022, where ASU students handed out Middle Eastern food to other students. In April 2024 the ASU conducted a tabling event at school where students and staff could stop by to get their names written in Arabic.

### Facts relating to the documentary film screening

12. During the fall of 2023, members of the Arab Student Union became concerned that people did not understand the facts about the Israeli-Palestinian situation and the war in Gaza. In an effort to get people talking about Palestine and bring attention to Gaza, in early December 2023 the ASU decided to show a 49-minute version of the documentary film, *The Occupation of the American Mind*, split between two lunch-hour club meetings on December 14

and 15, 2023. That version of the film can be viewed at https://www.youtube.com/watch?v=-jKRwdsq-As&rco=1.

13. A basic message of the film is that the Israeli government has engaged in a successful but misleading public relations campaign in the U.S. Another important part of the movie is how people are attacked for speaking up about Palestine by labeling them as antisemitic or calling them terrorists, which is something ASU members have to deal with. The film presents a pro-Palestinian point of view and is highly critical of the Israeli government's actions toward Palestinians.

14. All members of the student body and faculty were welcome to attend and watch the film and participate in the discussion. No one was required to attend.

15. Splitting the screening into two lunch hours would leave time after viewing each half for the ASU to facilitate an open discussion among the students who attended.

16. To advertise the screening, members of the Arab Student Union placed posters on some hallway walls in the school about a week before the event, in the same manner as other student clubs have used posters to advertise club events to the school community. The top line of the poster said, "Let's get educated!" Under the title of the film, the poster said, "Join us in learning & discussing!"

17. Student clubs at Jackson-Reed are routinely allowed to screen films as part of their activities. For example, the French Club has shown French films and the Marvel Monday Club screens and discusses Marvel films on Mondays.

18. There is no special procedure or permission required for a club to show a film at a club meeting.

19. Student clubs at Jackson-Reed routinely promote their upcoming events with written materials, including posters on hallway walls, without any prior review or approval by school faculty or administrators.

20. On the evening of December 6, 2023, a parent who was present in the school removed one of the posters from the wall and complained to the school administration about the showing of the film. In response, Principal Brown cancelled the event and had the posters taken down.

21. In a December 10, 2023, email to the ASU's faculty sponsor, Principal Brown stated that he would not allow ASU to screen the documentary, saying that the "content and individuals associated with the film may provoke strong emotional responses or polarizing views within our diverse school community."

22. Principal Brown's email also instructed the faculty sponsor to obtain prior approval before the club announced any other film screenings.

23. Principal Brown's December 10 email said nothing about any apprehension of disruption or violation of the rights of others.

24. On December 12, 2023, ASU club members met with Principal Brown and others to seek permission to show the film. Principal Brown stated that his mind was "set" about not allowing the ASU to screen *The Occupation of the American Mind.*

25. Principal Brown explained that he was concerned that the views portrayed in the documentary may be polarizing and may cause a divide among the student body. He said that the movie's narrator (Roger Waters) was a problem, and that he would not feel comfortable associating the school with a person whose views are critical of people that are part of the school community.

5

26. At the December 12 meeting, Principal Brown did not express any concern about disruption at the school if the film were shown.

27. At the December 12 meeting, Principal Brown informed the ASU that if it wanted to present materials that were not included on a DCPS-provided list of suggested resources about the Israeli-Palestine conflict, the club had to submit them to Mr. Brown in advance for vetting and approval.

28. Principal Brown also posted a statement on the school's website referring to the film screening as an "unsanctioned event" and an "unsanctioned activity" and stating that he had "met with the club's sponsor and the students [and] discussed the proper process for event approval."

29. Plaintiff's planned film screening was no less sanctioned than other events, including film screenings, that have been held by the Arab Student Union and other student clubs at Jackson-Reed. There is no rule requiring students to obtain permission to screen a film during a club meeting over lunch.

30. On January 3, 2024, ASU emailed Principal Brown a list of four additional films ASU wanted to screen. The email said, "We want to start our monthly screening with these movies so please get back to us."

31. Mr. Brown did not respond for more than a month. On February 6, he emailed to ASU, "These movies are currently under review, and I'll provide you with an update by the end of the week." On February 12, he emailed to ASU that the films were still under review. On February 22, he told ASU that he had spoken with a DCPS's "content specialist" and was hoping to get a response the next day.

32. ASU has never heard back from Mr. Brown about whether it is allowed to screen any of the films that it proposed.

33. Plaintiff has been trying to show *The Occupation of the American Mind* for more than four months, and has been trying to show other films for more than three months, and has not been allowed to do so.

34. Plaintiff wishes to show *The Occupation of the American Mind* while students are still at school this semester. The last day of school for Seniors is Friday, June 7, and ASU wants interested Seniors to be part of its audience, so they can bring a better understanding of this subject with them to college next fall. Members of the club who are Seniors also want to participate in the screening and the discussion.

## Facts relating to the Palestinian Culture Night

35. Seeking to inform and educate their fellow students about the Palestinian people, the Arab Student Union and its members decided to present a Palestinian Culture Night at the school in January 2024.

36. Other student clubs have held similar events. For example, in May 2023, the Ethiopian Eritrean Organization hosted a cultural event, which was so successful that they are going to have another one in May 2024. The ASU based its vision for a Palestinian Culture Night on that event.

37. ASU's faculty sponsor submitted an "Internal Building Use Agreement" form for the Palestinian Culture Night on December 19, 2023. The event was promptly approved, and was scheduled for January 18, 2024—thirty days later—and was put on Jackson-Reed's official calendar.

38. The event was subsequently removed from the calendar. The ASU's faculty sponsor was told that the reason for the removal was because the ASU had not planned the event one month in advance.

39. Failure to plan the event one month in advance was the only reason given for the cancellation of the event.

40. In fact, the event had been planned 30 days in advance.

41. There is no requirement that events be planned one month in advance reflected in the staff handbook or any other written materials provided by the school. The ASU's faculty sponsor had never heard of such a requirement.

42. On information and belief, Defendant Brown personally made the decision to remove the Palestinian Culture Night from the school calendar.

43. The school administration never expressed fear of any disruption that might be cause by the event.

44. The ASU tried to reschedule the event for February or March with more than one month's notice, but they were not allowed to do so.

45. Having been denied access to the school forum, Plaintiff's members presented a Palestinian cultural program at Busboys and Poets, a restaurant located in Takoma Park, D.C., on January 18, 2024—the same date they had planned to present it at the school. The event was well-attended and successful.

46. Because the event was off campus, it was attended by only a handful of Jackson-Reed students who were not members of the Arab Student Union.

47. Jackson-Reed students were the audience Plaintiff primarily wished to reach with the Palestinian Culture Night. For that reason, Plaintiff still wished to present such an event at

Jackson-Reed. The school refused to allow such an event in January, February, or March, despite having much more than a month's notice.

48. Eventually, Jackson-Reed approved a Palestinian Culture Night during Arab Heritage Month in April, and it is now scheduled for April 25, 2024.

49. In gaining approval for its Palestinian Culture Night, ASU was subjected to a review and approval process unlike any its faculty sponsor has experienced in the past or that sponsors of other clubs have ever had to go through, including a detailed review of the proposed program.

50. The Palestinian Culture Night that is expected take place on April 25 has been so heavily censored and restricted that it no longer presents the message that Plaintiff and its members had envisioned for the event.

51. Plaintiff wishes to organize another Palestinian Culture Night during the 2024-25 academic year, with the content of its choice and not subject to censorship of every detail by the school administration.

**Facts relating to distribution of printed material**

52. Student clubs at Jackson-Reed regularly engage in "tabling" in the school's atrium during lunch hour. The school provides tables and chairs, and student groups distribute printed and other materials and engage in conversation with other students to promote their clubs and spread awareness about the subject matter of the clubs.

53. The materials distributed at tabling events are not required to be reviewed or approved in advance by the school.

54. Before this spring, the ASU has not had to seek and obtain prior approval of materials to be displayed or distributed at tabling events.

55. Students are permitted to distribute small items to each other in school on an even more informal basis. Students at Jackson-Reed have recently distributed blue ribbons that fellow students can wear to express support for Israel. They have not sought or received permission to do so. They have not been told not to do so.

56. Plaintiff planned to have a tabling in early March 2024 to distribute Pro-Palestine stickers, offer face-paint "tattoos," and distribute a one-page "zine" that displayed and explained various Palestinian symbols. (A zine, derived from the word magazine, is a small-circulation self-published work of original or appropriated texts and images, usually reproduced by copy machine. *See* https://en.wikipedia.org/wiki/Zine.)

57. Unlike other clubs, and unlike ASU's own prior experience, ASU was required to submit its proposed zine for review.

58. Defendants disapproved some of the contents of the zine and required the students to censor their own expression.

59. Defendants required Plaintiff to delete an image of a man holding a set of keys accompanied by text explaining that the "Key of Palestine" represents homes that Palestinians lost when they were expelled or fled in 1948, and to which they hope to return.

60. Defendants required Plaintiff to delete an image of a popular cartoon character named Handala, who is named after the resilient handal plant, and who symbolizes Palestinian resistance.

61. Plaintiff was permitted to distribute its zine only in this censored form.

62. At the tabling event, ASU sought to distribute some stickers, one showing the Palestine flag, one showing an outline of the country, and one that said "Free Palestine."

63. During the tabling event a school administrator told the students that they were not allowed to distribute the stickers with the outline of Palestine or the ones that said "Free Palestine." The administrator cited no policy and gave no reason for this censorship.

64. Plaintiff wishes to conduct future tabling events at which its materials will not be censored.

### Facts relating to unequal treatment

65. With respect to screening a film, advertising its event with posters, presenting a cultural event, and tabling, Plaintiff has been treated unequally with other student clubs at Jackson-Reed.

66. The Jackson-Reed website lists more than sixty student clubs. In addition to the Arab Student Union, these clubs include the Asian Student Union, the Black Student Union, the Jewish Student Union, the Ethiopian Eritrean Organization, the Gender Sexuality Alliance, the Disability Student Alliance, and the Community Coalition for Change. Their activities involve expression with a variety of viewpoints on a variety of controversial subjects, including matters of racial/ethnic identity, sexual orientation and gender identity, disability accommodation, and international affairs. They have not been subjected to procedural roadblocks and censorship the way Plaintiff has been.

67. A Jackson-Reed club called The Birds & The Bees Sexual Health Club has distributed condoms on school grounds, along with a flier providing information about their use, about safe and unsafe sexual practices, and about sexually transmitted diseases. The school has not interfered with that activity, which was conducted multiple times in the 2023-24 academic year.

11

68. A Jackson-Reed club called the Gender and Sexuality Alliance has organized many events, including a Trans Day of Visibility, a Lesbian Visibility Week, a Queer Visibility Fair, a sale of Pride merchandise in the Atrium during Pride month, and a screening of an original video on the history of the Queer rights movement and the Queer Student experience at Jackson-Reed. The school has not interfered with those activities.

**Facts relating to ongoing irreparable injury**

69. Plaintiff continues to wish to show the 49-minute version of the 2016 documentary film, *The Occupation of the American Mind*, during two lunch periods this semester, leaving time for open discussion after each half. Plaintiff will do so if Defendants' prohibition is lifted.

70. Plaintiff continues to wish to present a Palestinian Culture Night at Jackson-Reed, with content to be determined by Plaintiff rather than censored by school officials. Plaintiff will do so during the next academic year if Defendants' censorship is lifted.

71. Plaintiff continues to wish to conduct tabling and distribute handouts and stickers this semester, with content to be determined by Plaintiff rather than censored by school officials. Plaintiff will do so if Defendants allow them to.

72. Time is of the essence, as the conflict in Gaza is ongoing and Plaintiff's messages are focused on informing and educating Jackson-Reed fellow students in a timely way about the plight of the Palestinian people. Plaintiff's members who are Seniors wish to participate in these activities, and Plaintiff wants this year's Seniors to be in the prospective audience, so that they can take their knowledge with them to their respective colleges in the fall.

73. The last day of school for Seniors in 2024 is Friday, June 7. The last practical dates for Plaintiff to screen *The Occupation of the American Mind* and to conduct a tabling is during the week ending on that date.

**Facts relating to the absence of any reasonable basis to anticipate disruption**

74. There is no reasonable basis to believe that allowing Plaintiff and its members to carry out the expressive activities they wish to conduct would result in any disruption at Jackson-Reed High School.

75. Defendants have never asserted that they anticipate disruption if Plaintiff's desired activities are carried out.

76. Principal Brown said nothing about disruption in his December 10, 2023, email to the club's faculty sponsor informing him that the *Occupation* film would not be shown, or at the December 12, 2023, meeting at which he explained why he had cancelled the film, or in his subsequent posting about the matter on the school's website.

77. No one in the school administration said anything about disruption when the Palestinian Culture Night was cancelled.

78. No one in the school administration said anything about disruption when Plaintiff was required to censor its zine or stop distributing certain stickers.

79. The students at Jackson-Reed live in the nation's capital and are accustomed to hearing, seeing, and learning about political and social controversies, including the events of the past six months in and around Gaza.

80. Jackson-Reed is one of the most diverse high schools in the country, and its students know that their fellow students come from many different backgrounds and hold differing viewpoints on many issues.

13

81. The students at Jackson-Reed are exposed to differing opinions every day, in newspapers, on television, and in social media, as well as in conversations with fellow students and others.

82. None of the facts recited in paragraphs 79, 80, and 81 have led to disruption at Jackson-Reed.

83. Members of the Arab Student Union have shared their opinions and feelings about the events in Gaza with fellow students and those conversations have been mutually respectful. They have not resulted in disruption.

84. Students at Jackson-Reed understand that education does not occur only in the classroom, and they value the exchange of views with others who do not necessarily share their own views.

85. Students at Jackson-Reed have been presented with information about, and engaged in conversations about, highly controversial subjects such as presidential politics, abortion, racial justice, immigration, and others. This has not led to disruption.

86. There has been extensive publicity about the Arab Student Union's efforts to show the *Occupation* movie and to present a Palestinian cultural event. That publicity has led to discussion and disagreement among students but has not led to any disruption or threatened disruption at the school.

## CLAIMS FOR RELIEF

### I. Violation of First Amendment rights
### (against both defendants, via § 1983)

87. The First Amendment to the United States Constitution prohibits state actors from abridging the freedom of speech.

88. Defendant District of Columbia, as a matter of policy or custom, or by the decision of a final policymaker, abridged Plaintiff's and its members' freedom of speech by cancelling Plaintiff's planned screening of *The Occupation of the American Mind,* by removing the posters advertising that screening from school hallways, by refusing to allow Plaintiff to present a Palestinian Culture Night with the content of Plaintiff's choosing, and by refusing to allow Plaintiff to distribute handouts and stickers with the content of Plaintiff's choice, in the usual times, places, and manners that such materials are distributed at Jackson-Reed High School. Defendant District of Columbia's actions violated, and continue to violate, Plaintiff's rights under the First Amendment to the Constitution of the United States.

89. Defendant Brown personally cancelled Plaintiff's planned screening of *The Occupation of the American Mind* and personally directed that Plaintiff's posters advertising that screening be removed from school hallways. Defendant Brown personally refused to permit Plaintiff to show the other films they wished to screen in the spring of 2024.

90. Defendant Browns' refusal to allow Plaintiff to show *The Occupation of the American Mind*, as described above, and to advertise that event with posters, as described above, violated, and continues to violate Plaintiff's rights under the First Amendment to the Constitution of the United States.

91. On information and belief, Defendant Brown personally made the decision to remove the Palestinian Culture Night from the school calendar.

92. Defendant Brown's refusal to allow Plaintiff to present a Palestinian Culture Night, as described above, with content of Plaintiff's choosing, violated, and continues to violate Plaintiff's rights under the First Amendment to the Constitution of the United States.

93. Defendants' violations are ongoing, as Plaintiff and its members wish to, and will, engage in these activities if Defendants are enjoined from prohibiting them.

94. Defendants' actions, under color of District of Columbia law, are subject to injunctive relief under 42 U.S.C. § 1983.

## II. Violation of First Amendment rights
### (against both Defendants, via the Court's equitable power)

95. The First Amendment to the United States Constitution prohibits state actors from abridging the freedom of speech.

96. Defendants' refusal to allow Plaintiff to show *The Occupation of the American Mind*, as described above, and to advertise that event with posters, as described above, violated, and continues to violate Plaintiff's rights under the First Amendment to the Constitution of the United States.

97. Defendants' refusal to allow Plaintiff to present a Palestinian Culture Night, as described above, with content of Plaintiff's choosing, violated, and continues to violate Plaintiff's rights under the First Amendment to the Constitution of the United States.

98. Defendants' refusal to allow Plaintiff to distribute handouts and stickers with the content of Plaintiff's choice, in the usual times, places, and manners that such materials are distributed at Jackson-Reed, violated, and continues to violate Plaintiff's rights under the First Amendment to the Constitution of the United States.

99. Defendants' actions, under color of District of Columbia law, are subject to injunctive relief under this Court's equitable power. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015).

### III. Violation of the Equal Access Act
### (against both Defendants, via 42 U.S.C. § 1983 or the court's inherent equitable power)

100. The Equal Access Act, 20 U.S.C. §§ 4071–4074, prohibits a public secondary school with a limited open forum from discriminating against students who wish to conduct a meeting within that forum on the basis of the religious, political, philosophical, or other content of the speech at such meetings. 20 U.S.C. § 4071(a); (b).

101. Jackson-Reed High School maintains a limited open forum, as that term is defined in the Equal Access Act. 20 U.S.C. § 4071(b).

102. Plaintiff's desired activities constitute meetings, as that term is defined in the Equal Access Act. 20 U.S.C. § 4072(3).

103. Defendants' refusal to allow Plaintiff to engage in its desired activities, as described above, violates Plaintiff's rights under the Equal Access Act.

104. Plaintiff's rights under the Equal Access Act are enforceable via 42 U.S.C. § 1983.

105. Alternatively, Plaintiff's rights under the Equal Access Act are enforceable via this court's inherent power to enjoin violations of federal law. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015).

### IV. Violation of the D.C. Student Bill of Rights

106. The D.C. Student Bill of Rights is contained in Title 5-E of the D.C. Municipal Regulations, section 2401. In relevant part, it provides:

> § 2401.17 Each student shall have the right to exercise his or her constitutional rights of free speech, assembly, and expression without prior restraint, so long as the exercise of these rights does not substantially interfere with the rights of others.
>
> § 2401.18 The exercise of the constitutional rights of free speech, assembly, and expression by students shall include, but is not necessarily limited to, the following: (a) Wearing political buttons, armbands, or other badges of symbolic expression;

17

(b) Organizing and participating in political and social organizations;
(c) Use of student bulletin boards without prior censorship, but not school bulletin boards without approval of the use which shall be reasonably provided by the schools;
. . .
(e) Preparation and distribution of posters, newspapers, or other printed matter, on or off school grounds, and the reasonable use of the school public address system subject to standards adopted by the student government organization in cooperation with school officials; provided, that such distribution or use shall be limited to reasonable times before, during, and after school hours in order to prevent undue interference with classroom activities and the rights of others; and
(f) Free expression and defense of views and opinions without having that expression affect the student's examinations, grades, academic achievement, or participation in extra-curricular activities.

107. Title 5-E of the D.C. Municipal Regulations, including section 2401, has the force of law.

108. The D.C. Student Bill of Rights is a municipal regulation adopted to protect the rights of students, and as such it is binding upon the D.C. Public Schools.

109. By prohibiting Plaintiff from showing *The Occupation of the American Mind* during lunch hour and prohibiting it from displaying posters to advertise that event; by prohibiting Plaintiff from presenting a Palestinian Culture Night with content of its choice at the school; and by requiring Plaintiff to alter the content of its printed material and prohibiting it from distributing stickers in school, Defendants have violated Plaintiff's rights under the D.C. Student Bill of Rights.

110. This Court has supplementary jurisdiction to enforce the D.C. Student Bill of Rights against the Defendants.

## REQUESTED RELIEF

Wherefore, Plaintiff respectfully requests that the Court:

A. DECLARE that Defendants' refusal to allow Plaintiff to show the movie *The Occupation of the American Mind* during lunch hour and to advertise the event using posters on

school walls violated Plaintiff's rights under the First Amendment, under the Equal Access Act, and under the D.C. Student Bill of Rights.

      B.      DECLARE that Defendants' refusal to allow Plaintiff to present a Palestinian Culture Night after school hours on school premises, including the expressive content Plaintiff wished to include, violated Plaintiff's rights under the First Amendment, under the Equal Access Act, and under the D.C. Student Bill of Rights.

      C.      DECLARE that Defendants' refusal to allow Plaintiff to distribute its 'zine with the expressive content Plaintiff wished to include, and to distribute stickers with the expressive content Plaintiff wished to include, violated Plaintiff's rights under the First Amendment, under the Equal Access Act, and under the D.C. Student Bill of Rights.

      D.      ORDER Defendants to allow Plaintiff to show the movie *The Occupation of the American Mind* during lunch hour and to advertise the event using posters on school walls on or before June 6 and 7, 2024.

      E.      ORDER Defendants to allow Plaintiff to present a Palestinian Culture Night after hours on school premises, including the expressive content Plaintiff wishes to include, on a date to be determined.

      F.      ORDER Defendants to allow Plaintiff to distribute its 'zine on school premises during school hours with the expressive content Plaintiff wishes to include.

      G.      ORDER Defendants to allow Plaintiff to distribute its stickers on school premises during school hours with the expressive content Plaintiff wishes to include.

      H.      ENTER a permanent injunction directing Defendants to treat the Arab Student Union and its members in the same manner that they treat other student clubs with respect to meetings, events, and distribution of expressive material.

I. AWARD to Plaintiff its costs and reasonable attorneys' fees in this action.

J. GRANT such other and further relief as to the Court appears just and proper.

April 24, 2024                                    Respectfully submitted,

*Arthur B. Spitzer*
Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
Eleanor DeGarmo[*]
American Civil Liberties Union Foundation
   of the District of Columbia
529 14th Street, NW, Suite 722
Washington, DC 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org
edegarmo@acludc.org

*Attorneys for Plaintiff*[**]

---

[*] Eleanor DeGarmo graduated from the Georgetown University Law Center in February 2024 and has been informed that she passed the February 2024 District of Columbia administration of the Uniform Bar Examination. She is awaiting admission to the D.C. Bar.

[**] Counsel wish to acknowledge the assistance of paralegal Elaine Stamp in the investigation of the facts and the preparation of this complaint.